IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| VICTOR L. MALLORY, JR., | ) | CASE NO. 1:25-cv-00142-DAR |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| WARDEN HAROLD MAY[1], | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

**I.       Introduction**

This matter was referred to me for the preparation of a Report and Recommendation regarding Petitioner Victor L. Mallory's ("Mallory") January 13, 2025 petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF Doc. 1, p. 16; non-document entry of Feb. 11, 2025). Respondent filed a Return of Writ and state court record on June 9, 2025. (ECF Doc. 13). On September 4, 2025, Mallory filed his Traverse. (ECF Doc. 20). The matter is now fully briefed and ripe for review.

**II.      Factual Background**

Ohio's Eighth District Court of Appeals summarized the facts of Mallory's convictions as follows:

> {¶ 2} In 2021, Mallory was indicted on one count of rape, in violation of R.C. 2907.02(A)(1)(b), with a specification that he is a sexually violent predator and one

---

[1] Mallory's petition names Thomas Watson as the respondent. However, in the Return of Writ, Respondent clarifies that Mallory is currently housed at Mansfield Correctional Institute and that Harold May is the warden of that facility.

count of importuning, in violation of R.C. 2907.07(A). Mallory waived his right to a jury trial, and the matter proceeded to a bench trial.

{¶ 3} The victim in this case is a minor girl, who was 12 years old at the relevant time; Mallory was 26. In August 2021, the victim received a direct message on the Instagram app, which she accessed on her tablet, from someone using the profile name g.o.a.t.64, later identified as Mallory.

{¶ 4} The direct message conversation between Mallory and the victim quickly escalated. They exchanged several sexually explicit messages over the course of the next several days as well as audio and video calls; all sent through Instagram. When age was discussed, Mallory told the victim he was "about to be 18"; the victim testified she told Mallory she was 14 years old. At one point, one of the victim's friends, who had access to the victim's Instagram account, was also messaging Mallory. Mallory eventually asked the victim to meet him in person. He also suggested she bring her friend, but the victim declined.

{¶ 5} On August 10, 2021, around 11 p.m., Mallory messaged the victim to tell her he was parked on the street near her apartment. The victim walked from her apartment to Mallory's car and sat inside on the passenger front seat. Mallory drove a short distance before he stopped the car, began touching the victim, and proceeded to have vaginal intercourse with her. The intercourse lasted approximately a minute before the victim complained that it hurt and they stopped. The victim got out of the car and went home. Mallory called the victim using the Instagram app but she ignored his calls.

{¶ 6} Shortly thereafter, the victim's mother came home from work. The mother noticed her daughter was acting suspicious and nervous and that her daughter's tablet kept receiving Instagram notifications. The mother began looking through the victim's Instagram app and discovered the direct messages from Mallory. The mother messaged Mallory, pretending she was her daughter. She asked for his picture. Mallory placed a video call through the app and the mother saw Mallory's face. During trial, the mother identified the person on the call as Mallory.

{¶ 7} The mother found out from her sister, who had gone to school with Mallory, that he was not 17 years old as he had purported to be. The mother located the contact information for Mallory's parole officer and contacted the officer. The mother also filed a police report and took her daughter to the doctor.

{¶ 8} Tina Funfgeld, a sexual abuse investigator with Cuyahoga County Division of Children and Family Services, interviewed the victim. Funfgeld testified that the purpose of the forensic interview is to address the child's safety and make any necessary medical or psychological referrals. During the interview, the victim disclosed that she met Mallory online. She agreed to meet him in person and met him on her street. She told the social worker she got in his car; he drove down the street, and they had sexual intercourse. The victim specifically described that

Mallory put "his private in her private," which she identified to Funfgeld in colloquial terms.

{¶ 9} According to Shakira Johnson, Mallory's parole office[r], Mallory was on parole for an unlawful sexual conduct with a minor conviction. Conditions of his parole included that he refrain from using social media and have no unsupervised contact with minors without prior approval from his parole officer.

{¶ 10} In August 2021, Johnson received a call from the victim's mother regarding Mallory. The mother sent Johnson screenshots of her daughter's Instagram messages, and Johnson verified Mallory's picture on his Instagram profile. Johnson contacted Mallory and told him to report to her. He complied and initially denied knowing the victim but then stated, "how old she told [him] she was." Johnson testified that Mallory was found to have violated the conditions of his parole and was sentenced to nine months in prison for the violation.

{¶ 11} Cleveland Police Detective Sabrina Choat was assigned to the investigation. She executed search warrants to Instagram, Facebook, and for Mallory's cell phone. She also prepared the tablet she received from the victim's mother for forensic analysis. Instagram business records showed that an Instagram user account belonging to g.o.a.t.64 was registered on April 23, 2020. The registered email was victormallory@****.com. The Instagram account was linked to Facebook, which was registered under Mallory's cell phone number.

{¶ 12} The court found Mallory guilty on both counts and the sexually violent predator specification and sentenced him to 25 years to life in prison for rape to be served concurrently to six years in prison for importuning.

*State v. Mallory*, No. 112074, 2023 WL 4010399, at *1-2 (Ohio Ct. App., June 15, 2023). These factual findings are presumed correct unless Mallory rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

### III. Procedural History

#### A. State Conviction

On December 30, 2021, the Cuyahoga County Grand Jury indicted Mallory on two counts, including: Counts One of rape, first degree felony, in violation of Ohio Revised Code ("O.R.C.") § 2907.02(A)(1)(b), with a Sexually Violent Predator Specification pursuant to O.R.C. § 2941.148(A); and Count Two of importuning, a second degree felony, in violation of

3

O.R.C.§ 2907.07(A), with a furthermore clause alleging that Mallory had previously been convicted of a sexually oriented offense or a child-victim oriented offense. (ECF Doc. 13-1, pp. 6-7).

On February 4, 2022, Mallory pled not guilty to the indictment. (*Id.* at p. 9). On August 16, 2022, Mallory waived his right to a jury trial. (*Id.* at pp. 11, 13).

On October 13, 2022, following a bench trial, the court found Mallory guilty of both counts and sentenced him to 25 years to life in prison on Count One and two to six years in prison on Count Two. (*Id.* at p. 15). The sentences were to be served concurrently. (*Id.*). Mallory was advised of post-release control and determined to be a Tier III sex offender. (*Id.*). Mallory was given 254 days of jail time credit. (*Id.*).

**B.     Direct Appeal**

Mallory filed a notice of appeal in Ohio's Eighth District Court of Appeals on October 24, 2022. (*Id.* at pp. 18-28). Mallory filed his appellant's brief on January 17, 2023. (*Id.* at pp. 30-42). In it, he raised the following two assignments of error:

1.     The Appellant's conviction was not supported by sufficient evidence.

2.     The Appellant's conviction was against the manifest weight of the evidence.

(*Id.* at p. 32). The State replied on February 24, 2023. (*Id.* at pp. 44-58). Mallory filed a reply brief on March 6, 2023. (*Id.* at pp. 60-69). On June 15, 2023, the Eighth District Court of Appeals overruled both assignments of error and affirmed the judgment of the trial court. (*Id.* at pp. 71-80; *see also State v. Mallory*, 2023 WL 4010399, (Ohio Ct. App., 2023)).

On September 1, 2023, Mallory, now acting pro se, filed a notice of appeal with the Ohio Supreme Court. (ECF Doc. 17-1, pp. 82-84). On the same day, Mallory filed a Motion for Leave to File a Delayed Appeal with the Ohio Supreme Court. (*Id.* at pp. 86-101). The Ohio Supreme Court granted Mallory's motion on October 24, 2023. (*Id.* at p. 103). Mallory filed his

4

Memorandum in Support of Jurisdiction on November 22, 2023, raising the following two propositions of law:

>   1. The Appellant's convictions was not supported by sufficient evidence, and the **Standard of Review** used by the Eighth Appellate District of Cuyahoga County entered on June 15, 2023 in it's [sic] **JOURNAL ENTRY AND OPINION** affirming the Appellant's convictions resulted in deprivation of due process and equal protection rights of Appellant's.
>
>   2. The Appellant's convictions was against the manifest weight of the evidence, and the Standard of Review used by the Eighth Appellate District of Cuyahoga County entered on June 15, 2023 in it's [sic] JOURNAL ENTRY AND OPINION affirming the Appellant's convictions resulted in deprivation of due process and equal protection rights of Appellant's.

(*Id.* at pp. 105-30) (emphasis in original). The State of Ohio filed a Waiver of Memorandum in Response on November 28, 2023. (*Id.* at p. 132). On January 23, 2024, the Ohio Supreme Court declined to accept jurisdiction of the appeal under Supreme Court Practice Rule 7.08(B)(4). (*Id.* at p. 134; *see also State v. Mallory*, 225 N.E.3d 1022 (Ohio 2024) (table)).

### 3. Post Conviction Proceedings

On March 25, 2024, Mallory filed a Writ of Mandamus in the Eighth District Court of Appeals seeking "'exculpatory' evidence of innocence regarding victim[']s testimony of the true identity having [tattoos] on his face." (ECF Doc. 13-1, pp. 136-41). On April 9, 2024, Judge Kelly Ann Gallagher filed a Motion for Summary Judgment on Mallory's writ. (*Id.* at pp. 143-53). Judge Kelly Ann Gallagher attached a March 28, 2024 journal entry in which she denies a motion for discovery filed by Mallory with the state trial court. (*Id.* at p. 152). The state appellate court granted the motion for summary judgment and denied the writ. (*Id.* at pp. 155-59).

On May 22, 2024, Mallory filed another Writ of Mandamus in the Eighth District Court of Appeals, again seeking "the victim[']s testimony & transcripts." (ECF Doc. 13-1, pp. 161-74). Judge Kelly Ann Gallagher filed a Motion for Summary Judgment on Mallory's writ, attaching

5

the March 28, 2024 journal entry. (*Id.* at pp. 177-87). The state appellate court denied the motion for summary judgment as moot and dismissed the writ. (*Id.* at pp. 189-95).

On May 22, 2024, Mallory filed a petition for writ of procedendo in the Eighth District Court of Appeals seeking "public records[,] transcripts[,] discovery, victim's testimony relative to the identity of the persons identified." (*Id.* at pp. 197-211). Judge Kelly Ann Gallagher filed a Motion for Summary Judgment on Mallory's writ and attached the March 28, 2024 journal entry denying his motion for discovery. (*Id.* at pp. 214-24). The state appellate court granted the motion for summary judgment and denied the writ. (*Id.* at pp. 226-31).

### IV. Federal Habeas Corpus Petition

On January 13, 2025, Mallory filed his federal habeas corpus petition, asserting the following grounds for relief:

> **Ground One[2]:**
> **Supporting Facts:** See transcript page 178 Line 6-25 and page 179 Line 1-10. Proof & facts to Claim: See transcript page 182 Line 1-25, page 183 Line 1-25, page 184 Line 1-25, page 186 Line 1-25, page 187 Line 1-25, page 188 Line 1-25, page 189 Line 1-25, page 190 Line 1-20[.]
>
> **Ground Two:** Sufficiency of the Evidence
> **Supporting Facts:** Journal entry and opinion foot not[e] states, The transcript reflects that during the victim's testimony she "indicated" where on the body she had stated the offender's cross tattoo was, but the transcript does not [r]eflect if the victim indicated the face or another part of the body. See transcript page 135 Line 14-23. Also said in police report. No DNA; No medical records; Improper Investigation!
>
> **Ground Three:** Manifest Weight of the Evidence
> **Supporting Facts:** In contrast to a sufficiency argument, a manifest weight challenge question[s] whether the state met its burden of persuasion. State v. Armstrong. 8th Dist. Cuyahoga No. 109709, 2021-Ohio-1087[.] A reviewing court examines the "<u>entire</u>" record. See transcript page 135 Line 14-23 and Also in police report.
>
> **Ground Four:** Ineffective Assistance of Appeal Attorney

---

[2] *Sic.*

6

>**Supporting Facts:** I sent Scott J. Friedman everything I wanted to argue. He argued whatever he wanted to argue. Arguments sent to Scott J. Friedman on 01/23/23. I have copies.

(ECF Doc. 1, pp. 5-10).

### III. Standard of Review

AEDPA applies to Mallory's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This is so because "[s]tate courts are adequate forums for the vindication of federal rights" and AEDPA thus acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). As such, AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Cullen*, 563 U.S. at 181, quoting 28 U.S.C. §§ 2254(a), (b), (c). Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application

> shall not be granted . . . unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *Cullen*, 563 U.S. at 181.

First, clearly established federal law for purposes of AEDPA review includes "the holdings, as opposed to dicta, of [U.S. Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to U.S. Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court despite both cases having materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). However, a state court does not act contrary to clearly established federal law where U.S. Supreme Court precedent is ambiguous or otherwise unavailable. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is an unreasonable application of Supreme Court precedent where the state court's adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; see also *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). Under § 2254(d)(2), a state court's factual determination will stand unless it is objectively unreasonable in light of the evidence presented in state court. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). "[A] federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 365.

Next, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). And, as the U.S. Supreme Court has repeated, "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion . . . ." *Burt*, 571 U.S. at 18. Federal courts must also defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982).

In all, federal habeas corpus relief is a "guard against extreme malfunctions in the state criminal justice systems," and is different in kind from the relief available in direct appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (internal quotation omitted). Thus, to obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing de novo questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) ("When the state court has not assessed the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.").

I.  **Procedural Barriers to Federal Habeas Corpus Review**

Before coming to federal court, a state habeas petitioner must overcome certain procedural barriers, including exhaustion of state remedies and procedural default. *See Daniels v. United States*, 532 U.S. 374, 381 (2001). A federal court sitting in habeas review may review

9

claims that were evaluated on the merits by the state court. But claims that were not evaluated by a state court, either because they were never fully presented to the state court (*i.e.*, state court remedies were unexhausted) or because they were not properly presented to the state court (*i.e.*, they are procedurally defaulted) are not available for federal habeas corpus review. *Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004), *aff'd sub nom. Bonnell v. Mitchell*, 212 F. App'x 517 (6th Cir. 2007).

    **A.**    **Exhaustion**

A petitioner must first give the state courts a "*fair*" opportunity to act on his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (emphasis in original). For a claim to have been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have been raised at each and every stage of state review. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). It is not enough for the claim raised in state court to be "somewhat similar" to the one raised in the habeas petition or implicate the same facts; the state court must have been called upon to apply the legal principles of the claim now presented to the federal courts. *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011).

The petitioner also must have presented their "claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Williams*, 460 F.3d at 807 (quotation marks omitted). In this Circuit, this can be done in one of four ways:

    (1) reliance upon federal cases employing constitutional analysis;

    (2) reliance upon state cases employing federal constitutional analysis;

    (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or

    (4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681 (paragraph breaks added).

Failure to exhaust occurs where state court remedies are still "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). This failure to exhaust can also lead to a petitioner procedurally defaulting his claims. If the petitioner has not fully utilized his state remedies and has no legal mechanism by which to do so now, the claim he failed to present is procedurally defaulted, and this Court cannot act on the claim either. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Williams v. Anderson*, 460 F.3d 789, 809 (6th Cir. 2006).

### B.     Procedural Default

The procedural default doctrine limits federal review if the petitioner has failed to follow the state's procedural requirements for presenting his or her claim in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). This doctrine flows from the insight that courts must have the authority to insist that "defendants present their arguments on time and according to established procedures." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Thus, a federal habeas court will not consider a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and is adequate to support the judgement.'" *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (quotation marks omitted).

This Circuit consults a four-part test to determine whether a petitioner has procedurally defaulted a claim. A petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim;

11

and (4) the petitioner cannot show cause and prejudice excusing the default. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Because the procedural-default bar to federal habeas review is harsh, courts have created safety-valves to permit review in limited circumstances. A petitioner can obtain review of procedurally defaulted claims if he or she shows: (1) "cause," *i.e.* that some external factor kept him from complying with the state rule or fairly presenting his claim; and (2) "prejudice," *i.e.* that, assuming the petitioner's constitutional claim has merit, there is a reasonable probability that a different verdict would have resulted if the alleged constitutional violation hadn't occurred. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012). A petitioner can also obtain review of a procedurally defaulted claim if the procedurally defaulted claim is based on new evidence that the petitioner was factually innocent of the crime of conviction. *See Coleman*, 501 U.S. at 750 ("fundamental miscarriage of justice" exception to procedural default); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim would establish that the petitioner was "actually innocent."). But "[A]ctual[] innocen[ce]" means "factual innocence, not mere legal insufficiency."; *Bousley v. United States*, 523 U.S. 614, 623 (1998). To overcome procedural default, an actual innocence claim must be supported by "new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

IV.  **Discussion**

   A.  **Grounds One and Two: Sufficiency of the Evidence**

Mallory's first ground for relief, which bears no title, simply lists several citations to the transcript of Mallory's bench trial. (ECF Doc. 1, p. 5). However, in his Traverse, Mallory states that his first and second grounds for relief are intended to be considered jointly. (ECF Doc. 20, p.

12

14 (asking the Court to merge Grounds 1 and 2 for review)). In Ground 2, Mallory asserts that his convictions were supported by insufficient evidence based upon the victim's identification of him as the perpetrator. According to Mallory, "[t]he transcript reflects that during the victim's testimony she 'indicated' where on the body she had stated the offender's cross tattoo was, but the transcript does not reflect if the victim identified the face or another part of the body." (ECF Doc. 1, p. 7). Mallory further argues that his "DNA was never found on or around the victim . . . ." (*Id.* at p. 17). In response, Respondent argues that "[t]he trial [c]ourt's finding of guilt is not constitutionally undermined where it is premised on testimony of the victim alone, especially where . . . a federal reviewing court does not reweigh the evidence or redetermine the credibility of witnesses." (ECF Doc. 13, p. 20). Respondent further argues that "the fact-finder had a cascade of credible evidence to convict Mallory wholly apart from what Mallory argues is a conflict of the testimony . . . ." (*Id.* at p. 25).

I note, that in his Petition, Mallory does not assert any argument as to how the Ohio appellate court unreasonably applied federal law when it denied his sufficiency of the evidence claim. However, it appears his claim centers upon a contention that the state appellate court unreasonably determined the facts in light of the evidence presented at trial (*See* ECF Doc. 1, pp. 5-7, 17). I disagree.

The due process clause requires the State prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship,* 397 U.S. 358, 363-64 (1970). In *Jackson v. Virginia,* 443 U.S. 307 (1979), the Supreme Court established the standard for reviewing constitutional claims challenging the sufficiency of the evidence:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the

13

> testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Id.* at 319. Otherwise stated, a petitioner is entitled to habeas corpus relief if, based on the record evidence at trial and in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Id*. at 324. The Sixth Circuit has aptly described this standard as imposing a "'nearly insurmountable hurdle.'" *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011), quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009).

Furthermore, the state does not have an "affirmative duty to rule out every hypothesis except that of guilty beyond a reasonable doubt." *Id.* at 326. Under this standard, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*

On federal habeas review of a claim challenging the sufficiency of the evidence, courts are bound by two layers of deference. First, in determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the federal court does not reweigh the evidence, reevaluate the credibility of witnesses, or otherwise substitute its opinion for that of the trier of fact. *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). Thus, even if the federal court might not agree with the trier of fact's decision to convict, it must uphold the determination if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. *Id.* The second layer of deference, required under AEDPA, extends to the state appellate court's determination so long as it is not unreasonable. *See Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008); *see also* 28 U.S.C. § 2254(d)(2). Additionally, as described above, comity principles require federal courts to defer to a state's judgment on issues of state substantive and procedural law, *see Murray v. Carrier*,

14

477 U.S. 478, 491 (1986), and federal courts must accept a state court's interpretation of state law and its rules of practice, *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

Here, the Ohio Eighth District Court of Appeals thoroughly analyzed the evidence adduced at trial before overruling Mallory's sufficiency of the evidence assignment of error. The state appellate court analyzed the claim as follows:

> {¶ 13} In his first assignment of error, Mallory contends that the state failed to present sufficient evidence to support his rape conviction because the victim's in-court identification of Mallory was contrary to her prior description of him.
>
> {¶ 14} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*
>
> {¶ 15} Mallory was convicted of rape under R.C. 2907.02(A)(1)(b), which provides that
>
>> [n]o person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>>
>> * * *
>>
>> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
>
> {¶ 16} Mallory was also convicted of importuning under R.C. 2907.07(A), which provides that "[n]o person shall solicit a person who is less than thirteen years of age to engage in sexual activity with the offender, whether or not the offender knows the age of the victim."
>
> {¶ 17} Mallory contends that the victim misidentified him as the perpetrator and the state failed to provide any other evidence linking him to the crime. Specifically, Mallory notes that during the victim's cross-examination, defense counsel asked if she remembered previously identifying the person she "had sex with as someone that had face tattoos," specifically that the offender had a cross tattoo under his left

15

eye. The victim admitted she had previously described the offender as such, and, upon further questioning, made the in-court observation that Mallory did not have any tattoos on his face.

{¶ 18} On re-direct, the victim testified that she had initially described the offender as "light skinned," with a cross tattoo, a chipped tooth, and other tattoos, testifying "like, I can't describe every tattoo, but he had tattoos on his body." The victim reiterated that Mallory was the man she met outside her apartment and "engaged in sexual activity with."

{¶ 19} The victim testified that she did not personally know Mallory when he reached out to her on Instagram. The victim and Mallory exchanged several sexually explicit private messages and Mallory eventually asked the victim to meet him. Mallory told the victim he was 17 years old. He also told the victim numerous times, using graphic, and at times violent, language, that he wanted to have sexual intercourse with her.

{¶ 20} The victim testified she was 12 years old at the time of the incident and she knew she was meeting Mallory to have sexual intercourse. After the assault, the victim's mother came home from work and discovered the Instagram conversations. Pretending to be the victim, the mother messaged Mallory. Mallory placed a video call and the mother saw his face. The mother positively identified Mallory during her testimony.

{¶ 21} After ascertaining Mallory's identity and age, the mother contacted his parole officer. Mallory reported to his parole office and although he denied knowing the victim, he also commented that the victim had told him she was older than 12 years of age.

{¶ 22} Through their investigation, the Cleveland police learned that the Instagram profile with the username "g.o.a.t.64" was registered to the email victormallory@* * *.com. The Instagram account was linked to Mallory's Facebook account and registered under Mallory's cell phone number. Additionally, the screenshot of the direct messages from Mallory's Instagram profile, entered into evidence as state's exhibit No. 4, lists the name "Mallory Victor" above his profile name, g.o.a.t.64.

{¶ 23} Regarding the face tattoo the victim initially reported that the offender had, pictures of Mallory, entered into evidence as state's exhibits Nos. 5 and 6, show that Mallory has numerous tattoos covering his torso, chest, arms, hands, fingers, and neck. Therefore, we do not consider the misidentification of a singular tattoo fatal to the victim's identification of Mallory as the offender.

{¶ 24} Considering the above, the state presented sufficient evidence to support Mallory's convictions for rape and importuning.

{¶ 25} The first assignment of error is overruled.

*State v. Mallory*, No. 112074, 2023 WL 4010399, at *2-3 (Ohio Ct. App., June 15, 2023).

Upon review, I find nothing in the court's analysis supports a conclusion that it unreasonably applied federal law or Supreme Court precedent, nor did it unreasonably determine the facts in light of the evidence presented at trial. Although Mallory argues otherwise, the state appellate court specifically addressed the "conflicting" evidence regarding the victim's identification of him in court and her description of his tattoos. In addressing this evidence, the appellate court resolved any alleged conflict by finding that "Mallory has numerous tattoos covering his torso, chest, arms, hands, fingers, and neck. Therefore, we do not consider the misidentification of a singular tattoo fatal to the victim's identification of Mallory as the offender." *Id.* I find this resolution of the allegedly conflicting evidence to be a reasonable determination of the facts in light of the other evidence presented at trial.

Mallory's argument that his DNA was not found on the victim is also unavailing. In the habeas corpus context, federal law recognizes that a conviction for any underlying offense is valid when it is supported by "substantial and competent evidence upon the record as a whole . . . whether the evidence is direct or wholly circumstantial." *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984); *see also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008) ("A conviction may be sustained based upon nothing more than circumstantial evidence."); *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002) ("A conviction may be based upon circumstantial evidence as well as inferences based upon the evidence."). No error of federal law occurs when upholding a conviction absent direct DNA evidence.

Accordingly, I recommend that the District Court deny habeas corpus relief pursuant to Grounds 1 and 2.

### B. Ground Three: Manifest Weight

In his third ground for relief, Mallory asserts that his state court convictions were against the manifest weight of the evidence. (ECF Doc. 1, p. 8). In his Traverse, Mallory acknowledges that federal habeas courts do "not recognize the manifest weight of the evidence" as a proper ground for relief pursuant to § 2254 and requests that this ground be withdrawn. (ECF Doc. 20, p. 14).

As Mallory acknowledged in his Traverse, claims that state court convictions are against the manifest weight of the evidence arise out of questions of state law and thus are not cognizable under federal habeas corpus review. *See, e.g.*, *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.) (stating that Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those convicted without sufficient proof to allow a finding of guilt beyond a reasonable doubt), *cert. denied*, 464 U.S. 951 (1983).

While I acknowledge that the Sixth Circuit has indicated that, where a petitioner is proceeding *pro se*, a reviewing court should liberally construe a manifest weight argument as a sufficiency of the evidence argument, which *is* cognizable in a federal habeas proceeding – I find liberal construction unnecessary here because Mallory did raise a sufficiency of the evidence argument which this Court addressed in Grounds One and Two. *See Nash v. Eberlin*, 258 F. App'x 761, 764 n. 4 (6th Cir. 2007). Therefore, I recommend that the District Court grant Mallory's request and dismiss Ground Three.

### C. Ground Four: Ineffective Assistance of Appellate Counsel

In his fourth ground for relief, Mallory argues that he received ineffective assistance of appellate counsel. (ECF Doc. 1, p. 10). However, in his Traverse, Mallory states he did not

18

exhaust this ground in state court and therefore requests to withdraw this ground for relief. (ECF Doc. 20, p. 14).

Upon review of the state court record, I agree with Mallory that he did not properly exhaust a claim for ineffective assistance of appellate counsel because he failed to raise this issue with the state courts. Thus, I recommend that the District Court grant his request to withdraw his fourth ground for relief.

### V. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(A), this Court will grant a certificate of appealability ("COA") for an issue raised in a § 2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

If the District Court accepts my recommendations, Mallory will not be able to show that reasonable jurists could disagree with the District Court's resolution of his sufficiency of the evidence claim because Mallory did not establish how the state court improperly applied federal law or Supreme Court precedent nor did he demonstrate that the court unreasonably determined the facts in light of the evidence produced at trial. Furthermore, the dismissal of his third and fourth grounds is not debatable among jurists as Mallory himself requested said dismissal. I therefore recommend that no certificate of appealability issue in this case.

VI.     **Recommendation**

For the reasons provided above, I recommend that Mallory's Petition for a writ of habeas corpus be denied as to Grounds One and Two and dismissed as to Grounds Three and Four. I further recommend that he be denied a certificate of appealability.

Dated: January 2, 2026

Reuben J. Sheperd
United States Magistrate Judge


OBJECTIONS

Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C. § 636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).